SCOTT J. SAGARIA (BAR # 217981)
ELLIOT W. GALE (BAR #263326)
JOE B. ANGELO (BAR #268542)
SCOTT M. JOHNSON (BAR #287182)
**SAGARIA LAW, P.C.**
2033 Gateway Place, 5th Floor
San Jose, CA 95110
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| **DOROTHY SMITH,**<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Experian Information Solutions, Inc.; Wells Fargo Bank, National Association and DOES 1 through 100 inclusive**,**<br><br>　　　　　　Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>　1.　Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff **DOROTHY SMITH**, an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b)), 15 USC 1681i-(a), 15 U.S.C. § 1681i(a)(2)(A(1). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included and discharged in Plaintiff's Chapter 7 bankruptcy.

2. Here, this case involves a tradeline that shows a delinquency or major derogatory being reported post discharge in March of 2017. Such reporting is patently false given that post discharge no payment was required by Plaintiff in March of 2017.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

4. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

6. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

8. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

9. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

10. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## **JURISDICTION & VENUE**

11. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

12. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

13. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 7 bankruptcy filing.

15. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

16. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendants reported in accordance with the recognized industry standard.

17. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's fresh start via a Chapter 7 discharge.

18. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

19. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

20. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

21. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
23. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
24. There are 28 FICO Scores that are commonly used by lenders.
25. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
26. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
27. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
28. There are five key factors that a FICO Score considers: **1) Payment History** 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
29. Each of the five factors is weighted differently by FICO.
30. **35% of a consumer's FICO Score relates to payment history**, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
31. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
32. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
33. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

34. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.
35. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

36. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
37. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
38. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
39. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
40. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

41. The CDIA's Metro 2 is accepted by all CRAs.
42. The credit reporting accepted industry standards for reporting metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
43. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
44. The credit bureaus helped write the CRRG
45. The CRRG is not readily available to the public. It can be purchased online for $229.45.
46. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
47. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
48. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
49. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

50. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes
51. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
52. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account)

**Bankruptcy Credit Reporting Industry Standards Post Discharge**

53. When a consumer files bankruptcy certain credit reporting industry standards exist.
54. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
55. Post discharge all derogatory reporting should cease in the payment history.
56. No credit reporting should occur in the payment history post discharge.

**Plaintiffs Bankruptcy Filing**

57. Plaintiff filed for Chapter 7 bankruptcy protection on February 9, 2016 in order to reorganize and repair Plaintiff's credit worthiness and FICO Score.
58. Post filing, Defendants would not accept payments directly from Plaintiff.
59. Post filing, Defendants were not anticipating receiving payments directly from Plaintiff.
60. Plaintiff's plan was discharged on June 6, 2016.
61. On January 26, 2017 Plaintiff ordered a credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure proper reporting by Plaintiff's Creditors.
62. Plaintiff noticed one Wells Fargo trade line on the January 26, 207 credit report that was reporting inaccurate, misleading, and incomplete information that did not comply with credit reporting industry standards.
63. Defendant Wells Fargo was reporting Plaintiff's account's status, post-discharge, as in collections and charged off. In addition the comments section of the report contradicted when the last delinquency was being reported.
64. Defendant Wells Fargo was listed as a creditor in Plaintiff's initial bankruptcy filing and received notice of the filing from the Bankruptcy Notification Center.
65. In response, Plaintiff disputed the inaccurate Wells Fargo trade line via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on February 7, 2017.
66. Plaintiff's dispute letter specifically put each Defendant Wells Fargo on notice that Plaintiff had filed for bankruptcy the account should not be reported Charged off and Plaintiff was not late..
67. Plaintiff requested that Wells Fargo refer to the CDIA guidelines for the proper way to report Plaintiff's bankruptcy, post discharge.

68. Plaintiff requested for any derogatory reporting to be updated.
69. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to Wells Fargo via an ACDV through e-OSCAR.
70. On March 13, 2017 Plaintiff ordered a second three bureau credit report from Equifax, Inc. to ensure Plaintiff's accounts had been updated.

### Inaccuracy

71. Defendant Wells Fargo Bank, National Association was reporting Plaintiff's account, beginning in 5157xxxx, inaccurately.
72. Defendant reported a Charge off or major delinquency in March of 2017.
73. The same trade line in the comments portion completely contradicts the payment history at issue by suggesting the last reported delinquency was in 2015. This is not true.
74. Specifically the trade line at issue conspicuously shows a delinquency reported in March of 2017.
75. Defendant Wells Fargo's charge off reporting was entered twelve months after Plaintiff received her chapter 7 discharge.
76. Plaintiff's account with Wells Fargo is not currently charged off as it has been discharged in bankruptcy.
77. Defendant reporting a Charge off in March of 2017 is simply impossible given Plaintiff's bankruptcy discharge.
78. As reported the account indicates that Defendant was owed some payment in March of 2017. This is not true. Plaintiff filed for bankruptcy and received a discharge. Thus no payment was owed in March of 2017
79. Plaintiff alleges that Defendant Wells Fargo did not investigate whether Plaintiff filed for bankruptcy or whether Plaintiff's account was included in the bankruptcy.
80. The Credit Reporting Agencies provided notice to Defendant Wells Fargo that Plaintiff was disputing the inaccurate and misleading information, but Defendant Wells Fargo

failed to conduct a reasonable investigation of the information, as required by the Fair Credit Reporting Act.

81. Defendant Wells Fargo's reporting appears to undermine Plaintiff's bankruptcy discharge as Wells Fargo has taken the approach that it is ok to continue reporting delinquent payments post discharge .

82. Based on Plaintiff's dispute, Defendant Wells Fargo should have known that its account was included in Plaintiff's bankruptcy given that it arose prepetition.

83. The most basic investigation would include a simple review of well-established credit reporting industry standards.

84. Plaintiff alleges that Defendant Wells Fargo did not review well established industry standards for credit reporting.

85. If Defendant Wells Fargo had reviewed such standards, Defendant Wells Fargo would have seen that their reporting was not in compliance and consequentially inaccurate or incomplete.

86. The lack of investigation is unreasonable.

### Willfulness

87. In addition Plaintiff alleges that the inaccuracies were a result of reckless policies and procedures in place by Defendant when reviewing disputes. Specifically, Wells Fargo consistently hires employees outside of the continental United States to review disputes.

88. These employees are given very little training and are expected to spend less than five minutes, reviewing, investigating, and responding to disputes.

89. Such a system is inherently reckless and no doubt resulted in the inaccuracies contained herein.

90. Moreover, given the aforementioned system Wells Fargo does not actually investigate claims. Instead Wells Fargo hires employees that superficially review disputes but no real investigation takes place.

**Damages**

91. Plaintiff pulled the credit report at issue after the dispute process expired at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.

92. As a result of the incorrect reporting, Plaintiff has suffered economic loss, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start

93. The actions of Experian and Wells Fargo as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

94. The actions of Wells Fargo as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy.**

95. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

96. Experian Information Solutions, Inc. violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

97. As a result of Experian Information Solutions, Inc.'s violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

98. The violations by Experian Information Solutions, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

**Willfulness**

99. Experian's actions were willful and or reckless given as a policy Experian simply parrots whatever information is provided by a data furnisher rather than doing even a cursory investigation.

100. In addition Experian intentionally hires employees who do NOT live within the intercontinental United States to investigate consumer disputes.

101. Experian hires these employees to specifically undermine and frustrate a consumer's ability to confront the individual specifically responsible for inaccurate reporting.

102. Experian provides little to no training to these individual employees and expects these employees to conduct over 90 investigations per day. Such policy allows less than five minutes to review, investigate, and respond to a consumer's dispute.

103. Such policy is inherently reckless and no doubt leads to inaccuracies

104. In the alternative, Experian Information Solutions, Inc. was negligent, as it failed to do even the most basic investigation, which would have uncovered the inaccuracies at issue, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

105. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian Information Solutions, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Wells Fargo Bank, National Association –Failure to Reinvestigate.**

106. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

107. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

108. Defendant Wells Fargo violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

109. Experian Information Solutions, Inc. provided notice to Wells Fargo that Plaintiff was disputing the inaccurate and misleading information but Wells Fargo Bank, National Association failed to conduct a reasonable investigation of the information as required by the FCRA.

110. Based on Plaintiff's dispute, Wells Fargo should have known their accounts were included in Plaintiff's Chapter 7 bankruptcy. The most basic investigation would include a simple review of well-established credit reporting industry standards.

111. Plaintiff alleges Wells Fargo did not review well established industry standards for credit reporting.

112. If Wells Fargo had reviewed such standards Defendants would have seen their reporting was not in compliance and consequently inaccurate and or incomplete.

113. Such an investigation would be reasonable.

114. Plaintiff also alleges that Wells Fargo did not investigate whether Plaintiff filed for bankruptcy, whether their accounts were included. The lack of investigation is unreasonable.

### Willfulness

115. Plaintiff further alleges that Wells Fargo has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

116. In addition Wells Fargo specifically hires employees outside of the intercontinental United States to review consumer disputes to frustrate and make difficult a consumer's ability to confront the individual most responsible for the credit reporting.

117. These individuals routinely do NOT investigate disputes but instead simply respond that the information being reported is accurate.

118. Such policies are inherently reckless and make inaccuracies inevitable.

**Experian Information Solutions, Inc. – Failure to Reinvestigate Disputed Information.**

119. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

120. After Plaintiff disputed the accounts mentioned above, Experian Information Solutions, Inc. was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

121. Experian Information Solutions, Inc. failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

122. Experian Information Solutions, Inc. is not a passive entity bound to report whatever information a DF provides.
123. Plaintiff alleges that Equifax, Inc. is readily familiar with Metro 2 guidelines and credit reporting industry standards.
124. Experian Information Solutions, Inc. sponsors and authorizes workshops hosted by the CDIA that teach the following to DFs:
    a. Do not report delinquencies post discharge.
    b. Do not report delinquencies post petition pre discharge in the payment history section regardless of Chapter 7 or Chapter 13. Instead report the Metro 2 indicator D.
    c. Update the CII to E post discharge in Chapter 7
    d. In Chapter 7 cases do not report past due balances post discharge.
    e. In Chapter 7 cases do not report balances that are inconsistent.
    f. In Chapter 7 cases do not report monthly payments that are inconsistent.
    g. The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.
125. Given the aforementioned, Plaintiff alleges that Experian Information Solutions, Inc. can and does suppress inaccurate information from being reported when DFs provide inaccurate information.
126. Experian Information Solutions, Inc. can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
127. Experian Information Solutions, Inc. failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.
128. Experian Information Solutions, Inc. would have known that Plaintiff filed for Chapter 7 based on multiple other accounts reporting as much.
129. Experian Information Solutions, Inc. would have known that Plaintiff's bankruptcy had been discharged based on multiple other accounts reporting as much.
130. Experian Information Solutions, Inc. would have known that no delinquencies should be reported post discharge.

131. Experian Information Solutions, Inc. therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Review and Consider All Relevant Information.**

132. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

133. Experian Information Solutions, Inc. violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

134. As a result of Experian Information Solutions, Inc.'s violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

135. The violations by Experian Information Solutions, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian Information Solutions, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

136. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian Information Solutions, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FIFTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. – Failure to Delete Disputed and Inaccurate Information.**

137. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

138. Experian Information Solutions, Inc. violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the dispute inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

139. As a result of Experian Information Solutions, Inc.'s violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

140. The violations by Experian Information Solutions, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian Information Solutions, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

141. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian Information Solutions, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
4. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: July 19, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

Dated: July 19, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff